UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
JEAN HILAIRE, JEAN FRESNEL, SUALIO    |
KAMAGATE, JEAN VERTUS, FOUSSEIMI    |
CAMARA, JEAN MOROSE, NOE PEREZ,    |
EDGAR ESPINOZA, BOLIVIO CHAVEZ,    |    Civil Action
BRAULIO MATAMORES FLORES, JEORGE    |
VENTURA CONCEPCION, ANGEL    |
SANDOVAL, CARLOS DE LEON CHIYAL,    |    Index No.: 19-CV-3169
and LESLY PIERRE on behalf of themselves and    |
all others similarly situated who were employed    |
by Underwest West Side Operating    |
   |
                Plaintiffs,    |
     - against -    |
   |
   |
UNDERWEST WESTSIDE OPERATING    |
CORP., MOSHE WINER, MARTIN TAUB, AVI    |
GOLAN, and ELAD EFORATI,    |
   |
                Defendants,    |
------------------------------------------------------------- X

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Jean Hilasire  ("Hilaire"), Jean Fresnel ("Fresnel"), Sualio Kamagate

("Kamagate"), Jean Vertus ("Vertus"), Fousseimi Camara ("Camara"), Jean Morose

("Morose"), Noe Perez ("Perez"), Edgar Espinoza ("Espinoza"), Bolivio Chavez

("Chavez"), Braulio Matamores Flores ("Flores"), Jeorge Ventura Concepcion

("Concepcion"), Angel Sandoval ("Sandoval"), Carlos De Leon Chiyal ("Chiyal"), and

Lesly Pierre ("Pierre") (collectively, the "Named Plaintiffs"), individually and on behalf of

the putative class (collectively "Plaintiffs"), by and through their attorneys, Arenson,

Dittmar and Karban, as and for their Complaint against Defendants Underwest Westside

Operating Corp. ("Underwest"), Moshe Winer ("Winer"), Martin Taub ("Taub"), Avi

Golan ("Golan"), and Elad Eforati ("Eforati") (collectively "Defendants") upon personal knowledge as to themselves and upon information and belief, allege as follows:

## NATURE OF THE ACTION

1. This action arises out of Defendants' failure to pay Plaintiffs the minimum wage, overtime compensation, spread-of-hours pay, and other monies, as required by the Fair Labor Standards Act, 29 U.S.C §§ 201, *et seq.*, ("FLSA") and the New York Labor Law, N.Y. LAB. LAW §§ 190, *et seq.*, § 650, *et seq.* ("NYLL").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3. This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because all or a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

## PARTIES

5. Plaintiffs are individuals residing in the State of New York who were employees of Defendants.

6. Upon information and belief, Defendant Underwest is a business incorporated in the State of New York, with its principal place of business at 600 Sylvan Ave. Suite 407, Englewood Cliffs, NJ 07632.

7.     Upon information and belief, Defendants Underwest, Winer and Taub are the owners and operators of the Westside Highway Car Wash, located at 638 W. 46th Street, New York, NY 10036.

8.     Upon information and belief, at all relevant times, Defendant Underwest has had gross sales or business in excess of $500,000 annually.

9.     Upon information and belief, the Defendant Underwest is engaged in interstate commerce.

10.    Upon information and belief, Defendant Winer is a resident of the State of New York and at all relevant times was the Chief Executive Officer of Defendant Underwest, a closely-held corporation, as defined by the Business Corporations Law.

11.    Upon information and belief, Defendant Taub is a resident of the State of New York and at all relevant times was a co-owner of Defendant Underwest, a closely-held corporation, as defined by the Business Corporations Law.

12.    Upon information and belief, Defendant Golan is a resident of the State of New York and at all relevant times has been the manager and/or general manager at the Westside Highway Car Wash.

13.    Upon information and belief, Defendant Eforati is a resident of the State of New York and for a number of years has been the manager at the Westside Highway Car Wash.

## COLLECTIVE ALLEGATIONS

14.    The Named Plaintiffs bring the First and Third claims in this action against Defendants as a collective action pursuant to the F.L.S.A., 29 U.S.C. § 216(b), on behalf of themselves and all other similarly-situated current and former non-exempt employees who have worked, and/or continue to work, for Defendants at any time during the three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective").

15.  At all relevant times, the Named Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job requirements, have been governed by similar pay practices and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them, among other things, the minimum wage and overtime compensation.

16.  Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiffs and the FLSA Collective, and as such, notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

17.  The FLSA Collective consists of numerous similarly-situated current and former employees of Defendants who were subject to the conduct complained of herein and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the action. Those similarly-situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ALLEGATIONS

18.  This action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

19.  Named Plaintiffs bring this action on behalf of themselves and a class consisting of all similarly situated persons who perform or have performed work for the Defendants, washing, cleaning, drying and detailing cars, trucks and other vehicles, and performing other non-managerial car-wash-related work, between April 9, 2013 and the filing of this Complaint (the "Putative Class").

20.  The Putative Class is so numerous that joinder of all members is impracticable.

21. The precise size of the Putative Class is unknown to Plaintiffs. The facts on which the calculation of that number can be based presently are within the sole control of the Defendants. In addition, the names of all potential members of the Putative Class are not known.

22. Upon information and belief, the size of the Putative Class is in excess of 40 individuals.

23. The questions of law and fact common to the Putative Class predominate over any questions affecting only individual members. Such questions include:

    a. Whether Defendants failed to pay Plaintiffs the minimum wage, pursuant to the FLSA and NYLL;

    b. Whether Defendants failed to pay Plaintiffs overtime compensation, pursuant to the FLSA and NYLL;

    c. Whether the Defendants failed to pay Plaintiffs spread-of-hours pay, pursuant to the NYLL;

    d. Whether the Defendants failed to provide Plaintiffs the documentation required by the Wage Theft Prevention Act;

    e. Whether the Defendants are liable for damages claimed hereunder, including but not limited to compensatory damages, interest, liquidated damages, costs and disbursements and attorneys' fees; and

    f. Whether the Defendants should be enjoined from engaging in such practices in the future.

24. The claims of the Named Plaintiffs are typical of the claims of the Putative Class.

25. The Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Putative Class.

26.    A class action is superior to other available methods for the fair and efficient adjudication
       of this controversy.

## STATEMENT OF FACTS

### FACTS COMMON TO ALL PLAINTIFFS

27.    Upon information and belief, since at least approximately 2013, Defendants have employed
       numerous individuals as car washers, cleaners, driers, detailers, and other occupations
       related to the car-wash business that "customarily and regularly receive tips" as that term is
       defined under 29 U.S.C. §§ 203 (m) (t), and the regulations and case law interpreting the
       same.

28.    Upon information and belief, Defendants Winer and Taub have made the decisions for
       Defendant Underwest, including decisions regarding hiring, firing, payment of wages,
       assignment of work, contractual matters, and all other administrative and company policy
       matters, either directly or through agents.

29.    Upon information and belief, Defendants Winer and Taub have actively managed,
       supervised, and directed, and continue to actively manage, supervise and direct, the business
       and operations of Defendant Underwest, either directly or through agents.

30.    Upon information and belief, Defendants Winer and Taub have maintained records of
       Plaintiffs' employment and pay, either directly or through agents.

31.    In sum, Defendants Winer and Taub have exercised complete dominion and control over
       Defendant Underwest.

32.    Upon information and belief, Defendant Golan had the power to hire, fire and/or determine
       the pay rate for Plaintiffs; supervised and controlled Plaintiffs and their work schedules;
       and maintained some records of Plaintiffs' employment and pay.

33. Upon information and belief, Defendant Golan made day-to-day operation decisions and personal decisions for Defendant Underwest.

34. Upon information and belief, Defendant Golan acted directly or indirectly in the interest of Defendants Underwest, Winer and Taub.

35. Upon information and belief, Defendant Golan, in his capacity as a manager, actively participated in the unlawful method of payment for Plaintiffs.

36. Upon information and belief, Defendant Eforati had the power to hire, fire and/or determine the pay rate for Plaintiffs; supervised and controlled Plaintiffs and their work schedules; and maintained some records of Plaintiffs' employment and pay.

37. Upon information and belief, Defendant Eforati made day-to-day operation decisions and personal decisions for Defendant Underwest.

38. Upon information and belief, Defendant Eforati acted directly or indirectly in the interest of Defendants Underwest, Winer and Taub.

39. Upon information and belief, Defendant Eforati, in his capacity as a manager, actively participated in the unlawful method of payment for Plaintiffs.

40. Upon information and belief, at all relevant times, Defendants acted as Plaintiffs' employers, within the meaning contemplated pursuant to 29 U.S.C. § 203(d) and N.Y. Lab. Law § 651(6).

41. Upon information and belief, at all relevant times, Plaintiffs were, and a number of the Named Plaintiffs continue to be, employees of Defendants, within the meaning contemplated pursuant to 29 U.S.C. § 203(e) and N.Y. Lab. Law § 651(5).

42. Upon information and belief, at all relevant times, the activities of Defendant Underwest constituted an "enterprise," within the meaning of Sections 3(r) and 3(s) of the FLSA, 29 U.S.C.§§ 203(r), (s).

43. Upon information and belief, Defendant Underwest is an "enterprise engaged in commerce" within the meaning contemplated pursuant to 29 U.S.C. § 201 et seq., and the cases interpreting it.

44. Upon information and belief, Defendants Winer and Taub managed and exercised control over Named Plaintiffs, either directly or through agents.

45. Upon information and belief, Plaintiffs regularly were required to perform work for Defendants without receiving proper minimum wages and overtime compensation as required by applicable federal and state law.

46. Upon information and belief, the payments made to Plaintiffs by Defendants constitute "wages" as that term is defined under 29 U.S.C. § 203(m) and New York Labor Law § 651.

47. Upon information and belief, Defendants engaged in a regular pattern and practice of making unlawful deductions from the earned wages of Plaintiffs in violation of 29 U.S.C § 203, and New York Labor Law §§ 193, 196-d. These deductions include but are not limited to the taking of tipped employees' earned tips by management employees.

48. Upon information and belief, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain proper and complete timesheets or payroll records.

49. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly have engaged in a policy, pattern, and/or practice of violating the FLSA and NYLL. This policy, pattern, and/or practice has included but is not limited to:

a. failing to pay all tips received by its tipped employees to those employees in occupations which "customarily and regularly receive tips" by permitting the taking of tips and gratuities by management personnel;

b. failing to provide required notice of the tip credit provisions of the FLSA and NYLL;

c. failing to pay Plaintiffs the proper minimum wage for each hour worked;

d. failing to pay Plaintiffs the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek;

e. failing to pay Plaintiffs spread-of-hours pay;

f. failing to provide Plaintiffs' adequate wage notices as required by the NYLL.

**PLAINTIFF JEAN HILAIRE**

50. One or more Defendants have employed Plaintiff Hilaire since at least approximately 1984.

51. From approximately 2012 through approximately November 2013, Plaintiff Hilaire typically worked approximately 14 hours per day, from approximately 6:30 a.m. to 9:00 p.m., 6 days per week.

52. During this period, Defendants typically paid Plaintiff Hilaire a flat salary of approximately $550 per week.

53. Since approximately January 20, 2014, Defendants have paid Plaintiff Hilaire on an hourly basis.

54. From approximately January 20, 2014 through approximately March 2014, Plaintiff Hilaire typically worked 5 days a week, from approximately 1:00 p.m. to 9:00 p.m.

55. From approximately April 2014 through approximately May 2014, Plaintiff Hilaire typically worked 6 days a week, from approximately 1:00 p.m. to 9:00 p.m.

56. From approximately June 2014 through approximately February 2018, Plaintiff Hilaire typically worked 6 days a week, from approximately 1:00 p.m. to 10:00 p.m.

57. Since approximately March 2018, Plaintiff Hilaire has typically worked 6 days a week, from approximately 7:00 a.m. to 6:00 p.m., but is sent home early around approximately 2:00 p.m., approximately twice a week.

58. Since approximately 2013, Plaintiff Hilaire has typically received approximately $60 per week in commission payments.

59. Throughout his employment, Plaintiff Hilaire was typically provided with a 30-minute meal break per day.

60. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Hilaire.

61. Throughout his employment, Defendants never advised Plaintiff Hilaire of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

62. Since approximately January 2014, Defendants failed to pay Plaintiff Hilaire the proper minimum wage.

63. Throughout his employment, Defendants failed to pay Plaintiff Hilaire the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

64. Throughout his employment, Defendants failed to pay Plaintiff Hilaire the proper spread-of-hours compensation.

65. Throughout his employment, Defendants failed to provide Plaintiff Hilaire with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF JEAN FRESNEL**

66.     Defendants employed Plaintiff Fresnel from approximately 1989 through approximately March 21, 2019.

67.     From approximately April 2013 through approximately January 19, 2014, Plaintiff Fresnel typically worked 6 days a week, from approximately 10:00 a.m. to 9:00 p.m.

68.     During this period, Defendants paid Plaintiff Fresnel a flat salary of $550 per week.

69.     During this period, Defendants failed to pay Plaintiff Fresnel any overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per week.

70.     Since approximately January 20, 2014, Defendants have paid Plaintiff Fresnel on an hourly basis.

71.     From approximately January 20, 2014 through approximately March 2014, Plaintiff Fresnel typically worked 5 days a week, from approximately 1:00 p.m. to 9:00 p.m.

72.     From approximately April 2014 through approximately May 2014, Plaintiff Fresnel typically worked 6 days a week, from approximately 1:00 p.m. to 9:00 p.m.

73.     From approximately June 2014 through approximately March 21, 2019, Plaintiff Fresnel typically worked 6 days a week, from approximately 1:00 p.m. to 10:00 p.m.

74.     From approximately June 2017 through approximately July 25, 2018, Plaintiff Fresnel typically received approximately $60 per week in commission payments.

75.     Throughout his employment, Plaintiff Fresnel was typically provided with a 30-minute meal break per day.

76.     Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Fresnel.

77. Throughout his employment, Defendants never advised Plaintiff Fresnel of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

78. Since approximately January 2014, Defendants failed to pay Plaintiff Fresnel the proper minimum wage.

79. Throughout his employment, Defendants failed to pay Plaintiff Fresnel the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

80. Throughout his employment, Defendants failed to pay Plaintiff Fresnel the proper spread-of-hours compensation.

81. Throughout his employment, Defendants failed to provide Plaintiff Fresnel with the documentation required under the Wage Theft Prevention Act.

### PLAINTIFF SUALIO KAMAGATE

82. One or more Defendants have employed Plaintiff Kamagate since approximately 1995.

83. From approximately 2013 through approximately 2014, Plaintiff Kamagate typically worked 6 days a week, from approximately 9:00 a.m. to 9:00 p.m. for five days and from approximately 6:30 p.m. to 7:00 a.m. on the last day.

84. From approximately 2013 through approximately 2014, Plaintiff Kamagate was typically paid a flat weekly salary of approximately $426.

85. From approximately 2015 through approximately 2017, Plaintiff Kamagate typically worked 6 days a week, from approximately 10:00 a.m. to 9:00 p.m. for five days and from approximately 6:30 p.m. to 7:00 a.m. on the last day.

86. From approximately January 2018 through approximately February 2018, Plaintiff Kamagate typically worked 6 days a week, from approximately 1:00 p.m. to 9:00 p.m. for five days and from approximately 6:30 p.m. to 7:00 a.m. on the last day.

87. From approximately March 2018 through approximately July 7, 2018, Plaintiff Kamagate typically worked 6 days a week, from approximately 1:00 p.m. to 10:00 p.m. for five days and from approximately 6:30 p.m. to 7:00 a.m. on the last day.

88. Since approximately July 8, 2018, Plaintiff Kamagate has typically worked the night shift, 6 days a week from approximately 10:00 p.m. to 7:00 a.m.

89. From approximately 2013 through approximately February 2018, Plaintiff Kamagate typically received approximately $15 every other week in commission payments.

90. Since approximately March 2018, Plaintiff Kamagate has typically received approximately $45 per week in commission payments.

91. Throughout his employment, Plaintiff Kamagate was typically provided with a 30-minute meal break per day.

92. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Kamagate.

93. Throughout his employment, Defendants never advised Plaintiff Kamagate of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

94. Throughout his employment, Defendants failed to pay Plaintiff Kamagate the proper minimum wage.

95. Throughout his employment, Defendants failed to pay Plaintiff Kamagate the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

96. Throughout his employment, Defendants failed to pay Plaintiff Kamagate the proper spread-of-hours compensation.

97. Throughout his employment, Defendants failed to provide Plaintiff Kamagate with the documentation required under the Wage Theft Prevention Act.

## PLAINTIFF JEAN VERTUS

98. Defendants employed Plaintiff Vertus from approximately October 2012 through approximately December 2013.

99. Throughout his employment, Plaintiff Vertus typically worked 6 days a week, from approximately 6:30 a.m. to 6:00 p.m.

100. Throughout his employment, Plaintiff Vertus had to work past his scheduled end-time approximately twice a week, until approximately 9:00 p.m.

101. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Vertus.

102. Throughout his employment, Defendants never advised Plaintiff Vertus of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

103. Throughout his employment, Defendants failed to pay Plaintiff Vertus the proper minimum wage.

104. Throughout his employment, Defendants failed to pay Plaintiff Vertus the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

105. Throughout his employment, Defendants failed to pay Plaintiff Vertus the proper spread-of-hours compensation.

106. Throughout his employment, Defendants failed to provide Plaintiff Vertus with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF JEAN MOROSE**

107. Defendants employed Plaintiff Morose from approximately 1999 through approximately April 2017.

108. Plaintiff Morose began working at the Westside Car Wash in approximately June 2013.

109. From approximately June 2013 through the end of his employment on April 2017, Plaintiff Morose typically worked 6 days a week, from approximately 6:30 a.m. to 6:00 p.m.

110. During this period, Plaintiff Morose had to work past his scheduled end-time approximately three times a week, until approximately 9:00 p.m.

111. During this period, Plaintiff Morose worked 7 days a week, approximately once a month.

112. Throughout his employment, Plaintiff Morose was typically provided with a 30-minute meal break per day.

113. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Morose.

114. Throughout his employment, Defendants never advised Plaintiff Morose of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

115. Throughout his employment, Defendants failed to pay Plaintiff Morose the proper minimum wage.

116. Throughout his employment, Defendants failed to pay Plaintiff Morose the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

117. Throughout his employment, Defendants failed to pay Plaintiff Morose the proper spread-of-hours compensation.

118. Throughout his employment, Defendants failed to provide Plaintiff Morose with the documentation required under the Wage Theft Prevention Act.

### PLAINTIFF FOUSSEIMI CAMARA

119. One or more Defendants have employed Plaintiff Camara since approximately 1990.

120. From approximately 2013 through approximately February 2018, Plaintiff Camara typically worked 6 days a week, from approximately 6:30 a.m. to 9:00 p.m.

121. Since approximately March 2018, Plaintiff Camara has typically worked 6 days a week, from approximately 7:00 a.m. to 6:00 p.m.

122. Since approximately March 2018, Plaintiff Camara has received approximately $50 per week in commission payments.

123. Throughout his employment, Plaintiff Camara was typically provided with a 30-minute meal break per day.

124. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Camara.

125. Throughout his employment, Defendants never advised Plaintiff Camara of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

126. Throughout his employment, Defendants failed to pay Plaintiff Camara the proper minimum wage.

127. Throughout his employment, Defendants failed to pay Plaintiff Camara the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

128. Throughout his employment, Defendants failed to pay Plaintiff Camara the proper spread-of-hours compensation.

129. Throughout his employment, Defendants failed to provide Plaintiff Camara with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF NOE PEREZ**

130. Defendants employed Plaintiff Perez from approximately summer 2014 through approximately September 2018.

131. From approximately the summer of 2014 through approximately December 2016, Plaintiff Perez typically worked 6 days a week, from approximately 6:30 a.m. to 6:00 p.m. three days a week and from approximately 6:30 a.m. to 9:00 p.m. on the other three days.

132. From approximately January 2017 through approximately December 2018, Plaintiff Perez typically worked 6 days a week, from approximately 6:30 a.m. to 6:00 p.m.

133. From approximately January 2018 through approximately September 2018, Plaintiff Perez typically worked 6 days a week, from approximately 7:00 a.m. to 5:00 p.m.

134. From approximately January 2018 through approximately September 2018, Plaintiff Perez typically received approximately $90 per week in commission payments.

135. Throughout his employment, Plaintiff Perez was typically provided with a 30-minute meal break per day.

136. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Perez.

137. Throughout his employment, Defendants never advised Plaintiff Perez of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

138. Throughout his employment, Defendants failed to pay Plaintiff Perez the proper minimum wage.

139. Throughout his employment, Defendants failed to pay Plaintiff Perez the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

140. Throughout his employment, Defendants failed to pay Plaintiff Perez the proper spread-of-hours compensation.

141. Throughout his employment, Defendants failed to provide Plaintiff Perez with the documentation required under the Wage Theft Prevention Act.

### PLAINTIFF EDGAR ESPINOZA

142. Defendants have employed Plaintiff Espinoza since approximately 2000.

143. From approximately January 2013 through approximately April 2018, Plaintiff Espinoza typically worked 6 days a week, from approximately 6:30 a.m. to 6:00 p.m. five days a week and from approximately 6:30 a.m. to 9:00 p.m. once a week.

144. From approximately May 2018 through approximately October 2018, Plaintiff Espinoza typically worked 6 days a week, from approximately 7:00 a.m. to 6:00 p.m.

145. Since approximately November 2018, Plaintiff Espinoza has typically worked 6 days a week, from approximately 7:00 a.m. to 5:00 p.m.

146. Throughout his employment, Plaintiff Espinoza was typically provided with a 30-minute meal break per day.

147. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Espinoza.

148. Throughout his employment, Defendants never advised Plaintiff Espinoza of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

149. Throughout his employment, Defendants failed to pay Plaintiff Espinoza the proper minimum wage.

150. Throughout his employment, Defendants failed to pay Plaintiff Espinoza the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

151. Throughout his employment, Defendants failed to pay Plaintiff Espinoza the proper spread-of-hours compensation.

152. Throughout his employment, Defendants failed to provide Plaintiff Espinoza with the documentation required under the Wage Theft Prevention Act.

### PLAINTIFF BOLIVIO CHAVEZ

153. Defendants have employed Plaintiff Chavez since approximately 2000.

154. From approximately 2013 through approximately April 2016, Plaintiff Chavez typically worked 6 days a week, from approximately 6:30 a.m. to 6:00 p.m. three days a week and from approximately 6:30 a.m. to 9:00 p.m. on the other three days.

155. From approximately May 2016 through approximately December 2016, Plaintiff Chavez typically worked 6 days a week, from approximately 11:00 a.m. to 9:00 p.m.

156. From approximately January 2017 through approximately December 2017, Plaintiff Chavez typically worked 6 days a week, from approximately 11:00 a.m. to 6:00 p.m. two days a week and from approximately 11:00 a.m. to 9:00 p.m. on the other four days.

157. Since approximately January 2018, Plaintiff Chavez has typically worked 6 days a week, from approximately 1:00 p.m. to 6:00 p.m. three days a week and from approximately 1:00 p.m. to 10:00 p.m. on the other three days.

158. Throughout his employment, Plaintiff Chavez was typically provided with a 30-minute meal break per day.

159. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Chavez.

160. Throughout his employment, Defendants never advised Plaintiff Chavez of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

161. Throughout his employment, Defendants failed to pay Plaintiff Chavez the proper minimum wage.

162. Throughout his employment, Defendants failed to pay Plaintiff Chavez the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

163. Throughout his employment, Defendants failed to pay Plaintiff Chavez the proper spread-of-hours compensation.

164. Throughout his employment, Defendants failed to provide Plaintiff Chavez with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF BRAULIO MATAMORES FLORES**

165. Defendants employed Plaintiff Flores from approximately 2012 through approximately August 2018.

166. From approximately 2012 through approximately 2013, Plaintiff Flores typically worked a regular schedule of 6 days a week, from approximately 6:30 a.m. to 9:00 p.m.

167. From January 2014 through approximately December 2014, Plaintiff Flores typically worked 6 days a week, from approximately 6:30 a.m. to 6:00 p.m. three days a week and from approximately 6:30 a.m. to 9:00 p.m. on the other three days.

168. From approximately 2015 through approximately 2016, Plaintiff Flores typically worked a regular schedule of 6 days a week, from approximately 6:30 a.m. to 6:00 p.m.

169. From approximately 2017 through approximately August 2018, Plaintiff Flores typically worked 6 days a week, from approximately 6:30 a.m. to 6:00 p.m. on most days and from approximately 6:30 a.m. to 3:00 p.m., approximately twice a week.

170. Throughout his employment, Plaintiff Flores was typically provided with a 30-minute meal break per day.

171. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Flores.

172. Throughout his employment, Defendants never advised Plaintiff Flores of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

173. Throughout his employment, Defendants failed to pay Plaintiff Flores the proper minimum wage.

174. Throughout his employment, Defendants failed to pay Plaintiff Flores the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

175. Throughout his employment, Defendants failed to pay Plaintiff Flores the proper spread-of-hours compensation.

176. Throughout his employment, Defendants failed to provide Plaintiff Flores with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF JEORGE VENTURA CONCEPCION**

177. Defendants have employed Plaintiff Concepcion since approximately March 11, 2015.

178. From approximately March 11, 2015 through approximately March 11, 2016, Plaintiff Concepcion typically worked 6 days a week, from approximately 8:00 a.m. to 6:00 p.m. three days a week and from approximately 8:00 a.m. to 9:00 p.m. on the other three days.

179. From approximately March 12, 2016 through approximately December 2017, Plaintiff Concepcion typically worked 6 days a week, from approximately 11:00 a.m. to 9:00 p.m.

180. Since approximately January 2018 through October 2018, Plaintiff Concepcion has typically worked 6 days a week, from approximately 1:00 p.m. to 10:00 p.m.

181. Since approximately November 2018, Plaintiff Concepcion has typically worked 6 days a week, from approximately 1:00 p.m. to 10:00 p.m. three days a week and from approximately 1:00 p.m. to 6:00 p.m. on the other three days.

182. From approximately March 11, 2015 through approximately December 2017, Plaintiff Concepcion was typically provided with a 30-minute meal break per day.

183. Since January 2018, Plaintiff Concepcion typically has not been provided with a 30-minute meal break due to his shortened workday.

184. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Concepcion.

185. Throughout his employment, Defendants never advised Plaintiff Concepcion of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

186. Throughout his employment, Defendants failed to pay Plaintiff Concepcion the proper minimum wage.

187. Throughout his employment, Defendants failed to pay Plaintiff Concepcion the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

188. Throughout his employment, Defendants failed to pay Plaintiff Concepcion the proper spread-of-hours compensation.

189. Throughout his employment, Defendants failed to provide Plaintiff Concepcion with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF ANGEL SANDOVALS**

190. Defendants have employed Plaintiff Sandoval since approximately March 2012.

191. From approximately March 2012 through approximately May 2013, Plaintiff Sandoval typically worked, 6 days a week, from approximately 6:30 a.m. to 6:00 p.m.

192. From approximately June 2013 through approximately April 2018, Plaintiff Sandoval typically worked 6 days a week, from approximately 6:30 a.m. to 6:00 p.m. four days a week and from approximately 6:30 a.m. to 9:00 p.m. on the other two days.

193. Since approximately May 2018, Plaintiff Sandoval has typically worked 6 days a week, from approximately 7:00 a.m. to 2:00 p.m.

194. Since approximately February 2019, Plaintiff Sandoval has typically received approximately $95 per week in commission payments.

195. From approximately March 2012 through approximately April 2018, Plaintiff Sandoval was typically provided with a 30-minute meal break per day.

196. Since May 2018, Plaintiff Sandoval typically has not been provided with a 30-minute meal break due to his shortened workday.

197. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Sandoval.

198. Throughout his employment, Defendants never advised Plaintiff Sandoval of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

199. Throughout his employment, Defendants failed to pay Plaintiff Sandoval the proper minimum wage.

200. Throughout his employment, Defendants failed to pay Plaintiff Sandoval the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

201. Throughout his employment, Defendants failed to pay Plaintiff Sandoval the proper spread-of-hours compensation.

202. Throughout his employment, Defendants failed to provide Plaintiff Sandoval with the documentation required under the Wage Theft Prevention Act.

### PLAINTIFF CARLOS DE LEON CHIYAL

203. Defendants employed Plaintiff Chiyal from approximately November 2012 through approximately mid-April 2014.

204. Throughout his employment, Plaintiff Chiyal typically worked 6 days a week, from approximately 6:30 a.m. to 9:00 p.m., four days a week and from approximately 6:30 a.m. to 6:00 p.m. on the other two days.

205. Throughout his employment, Plaintiff Chiyal was typically provided with a 30-minute meal break per day.

206. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Chiyal.

207. Throughout his employment, Defendants never advised Plaintiff Chiyal of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

208. Throughout his employment, Defendants failed to pay Plaintiff Chiyal the proper minimum wage.

209. Throughout his employment, Defendants failed to pay Plaintiff Chiyal the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

210. Throughout his employment, Defendants failed to pay Plaintiff Chiyal the proper spread-of-hours compensation.

211. Throughout his employment, Defendants failed to provide Plaintiff Chiyal with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF LESLY PIERRE**

212. One or more Defendants have employed Plaintiff Pierre since approximately August 13, 2018.

213. From approximately August 13, 2018 through approximately November 3, 2018, Plaintiff Pierre typically worked 6 days a week, from approximately 7:00 a.m. to 4:00 p.m.

214. During this period, Plaintiff Pierre was sent home early at times, in an effort to keep his total weekly hours close to 40.

215. Since approximately November 4, 2018, Plaintiff Pierre has typically worked 6 days a week, from approximately 1:00 p.m. to 10:00 p.m.

216. Throughout his employment, Plaintiff Pierre was typically provided with a 30-minute meal break per day.

217. Upon information and belief, Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Pierre.

218. Throughout his employment, Defendants never advised Plaintiff Pierre of the tip credit provisions pursuant to the FLSA, NYLL and the cases interpreting them.

219. Throughout his employment, Defendants failed to pay Plaintiff Pierre the proper minimum wage.

220. Throughout his employment, Defendants failed to pay Plaintiff Pierre the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

221. Throughout his employment, Defendants failed to pay Plaintiff Pierre the proper spread-of-hours compensation.

222. Throughout his employment, Defendants failed to provide Plaintiff Pierre with the documentation required under the Wage Theft Prevention Act.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**

223. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

224. Named Plaintiffs have consented to be parties to this action pursuant to 29 U.S.C. § 216(b).

225. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

226. Defendants illegally claimed a tip credit against the minimum wage for its tipped employees, when such a credit was not legally permissible.

227.  Defendants cannot avail themselves of the tip credit as Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiffs and failed to advise Plaintiffs of the tip credit provisions pursuant to the FLSA and the cases interpreting it.

228.  Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

229.  Defendants were required to pay Plaintiffs at a rate not less than the minimum wage rate under the FLSA for all hours worked.

230.  Defendants willfully and knowingly failed to pay Plaintiffs the required minimum wages under the FLSA for each hour worked.

231.  Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

232.  As a result of the unlawful acts of the Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE

233.  Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

234.  The minimum wage provisions set forth in the NYLL and its supporting regulations apply to Defendants and Plaintiffs.

235.  Defendants illegally claimed a tip credit against the minimum wage for its tipped employees, when such a credit was not legally permissible.

236. Defendants cannot avail themselves of the tip credit as Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiffs and failed to advise Plaintiffs of the tip credit provisions pursuant to the NYLL and the cases interpreting it.

237. Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

238. Defendants were required to pay Plaintiffs at a rate not less than the minimum wage rate under the NYLL for all hours worked.

239. Defendants willfully failed to pay Plaintiffs the minimum wage for each hour worked.

240. By virtue of Defendants' failure to pay Plaintiffs the minimum wage for all hours worked, Defendants have willfully violated NYLL Article 19, §§ 650, et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. 142-2.1.

241. As a result of the unlawful acts of the Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 *et seq.*

## THIRD CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

242. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

243. Named Plaintiffs have consented to be parties to this action pursuant to 29 U.S.C. § 216(b).

244. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

245. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs.

246. Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

247. Defendants willfully, knowingly and repeatedly refused to pay Plaintiffs overtime compensation at the statutory rate of time-and-a-half for all hours worked in excess of forty hours per workweek, as required by the FLSA.

248. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

249. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME

250. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

251. The overtime provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and Plaintiffs.

252. Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

253. The regulations accompanying the New York Labor Law, N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2, require an employer to pay an employee overtime "at a wage rate of one and one-half times the employee's regular rate."

254. The New York Labor Law, N.Y. LAB. LAW § 663, provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

255. Upon information and belief, Plaintiffs worked more than forty (40) hours a week while working for Defendants.

256. Defendants failed to pay Plaintiffs overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) each week, as required by the NYLL.

257. Consequently, by failing to pay to Named Plaintiffs and other members of the New York Class the overtime compensation for work the performed after the first forty (40) hours worked in a week, Defendants violated the New York Labor Law, N.Y. LAB. LAW § 663 and N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

258. Defendants' failure to pay the required overtime wages, as set forth above was willful within the meaning of §§ 198 and 663 of the New York Labor Law.

259. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such

amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 et seq.

## FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – SPREAD-OF-HOURS PAY

260. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

261. Pursuant to 12 NYCRR § 142-2.4, Defendants were required to pay Plaintiffs an extra hour of pay for any split-shift or day in which the employee's "spread of hours" exceeds 10 hours. The relevant spread is the time between the beginning and the end of employee's work day including all working time, time off for meals, and time off duty, as defined by 12 NYCRR § 142-2.18.

262. Plaintiffs worked shifts with a spread of hours in excess of 10 hours per day but were never paid an extra hour of pay on each day on which they worked over 10 hours.

263. Defendants' failure to pay the required wages as set forth above was willful within the meaning of Sections 198 and 663 of the New York Labor Law.

264. Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

265. Plaintiffs are entitled to the unpaid wages required by New York Labor Law.

266. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 *et seq.*

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNLAWFULLY RETAINED TIPS

267. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

268. Pursuant to the New York Labor Law, N.Y. LAB. LAW § 196-d, "No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

269. By improperly withholding portions of gratuities provided to Plaintiffs, Defendants violated N.Y. LAB. LAW § 196-d.

270. Upon information and belief, Defendants' improper withholding of gratuities earned by Plaintiffs was willful within the meaning of Sections 198 and 663 of the New York Labor Law.

271. The Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

272. As a result of the unlawful acts of the Defendants, Plaintiffs have been deprived of gratuities in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 et seq.

## SEVENTH CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNLAWFULLY RETAINED TIPS

273. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

274. Pursuant to 29 U.S.C. § 203(m), "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

275. By improperly withholding portions of gratuities provided to Plaintiffs, Defendants violated 29 U.S.C. § 203(m).

276. Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

277. As a result of the unlawful acts of the Defendants, Plaintiffs have been deprived gratuities in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

### EIGHT CAUSE OF ACTION
### NEW YORK LABOR LAW – WAGE THEFT PREVENTION ACT VIOLATION

278. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

279. Upon information and belief, Defendants failed to furnish Plaintiffs with the wage notice(s) required by NYLL § 195 (1).

280. Upon information and belief, Defendants failed to furnish Plaintiffs with the wage statement(s) required by NYLL § 195 (3).

281. Upon information and belief, Defendants' failure to furnish Plaintiffs with the notices and statements pursuant to NYLL § 195 (1) and (3) was willful and intentional.

282. NYLL § 195 (1) requires that employers furnish employees at the time of hire a notice containing, among other things, the rate or rates of pay and the basis thereof; the regular

pay day designated by the employer, the name of the employer; any "doing business as" names used by the employer; the address of the employer's main office or principal place of business and the telephone number of the employer.

283. NYLL § 195(3) requires that employers furnish each employee with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

284. NYLL § 195(4) requires, among other things, that employers establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

285. NYLL § 661 requires that Defendants maintain, inter alia, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

286. 12 N.Y.C.R.R. § 142-2.6 requires Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, inter alia, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

287. N.Y.C.R.R. § 142-2.7 requires Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

288. Defendants failed to provide Plaintiffs with any of the requisite notices and statements described above in the foregoing paragraphs.

289. As a result of Defendants' failure to furnish the wage notices pursuant to NYLL 195(1), Plaintiffs are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(b).

290. As a result of Defendants' failure to furnish the wage statements pursuant to NYLL 195 (3), Plaintiffs are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(d).

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs, on behalf of themselves and all other members of the FLSA Collective and Putative Class, respectfully request that this Court grant the following relief:

(1)    That, at the earliest possible time, Named Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been at any time during the six years immediately preceding the filing of this suit, up through and including the date of this court's issuance of court-supervised notice, employed by Defendants as non-exempt employees.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper minimum hourly compensation, overtime compensation wages and/or spread-of-hours pay;

(2)    Certification of this action as a class action pursuant to FRCP Rule 23 on behalf of the members of the Putative Class and appointing the Named Plaintiffs and their counsel to represent the Putative Class;

(3)    Designation of Named Plaintiffs as representatives of the Putative Class, and counsel of record as Class Counsel;

(4)  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

(5)  Appropriate equitable and injunctive relief to remedy Defendant's violations of the FLSA and NYLL;

(6)  An award of monetary damages to be determined at trial for wages owed, unpaid overtime and spread-of-hours compensation, penalties, liquidated damages and all other monies owed to Plaintiffs;

(7)  An award of prejudgment and post judgment interest;

(8)  An award of attorneys' fees and costs of this action;

(9)  An injunction against the Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

(10) Such other and further relief as this Court deems just and proper.


Dated:  New York, New York
         April 9, 2019

                              Respectfully submitted,

                              **ARENSON, DITTMAR & KARBAN**


                              _____/s_____
                              By: Steven Arenson
                              200 Park Avenue, Suite 1700
                              New York, New York 10166
                              Tel:    (212) 490-3600
                              Fax:    (212) 682-0278
                              steve@adklawfirm.com
                              *Attorneys for Plaintiffs*