## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEAN HILAIRE, et. al., | |
| Plaintiffs, | Civil Action No. 19-cv-3169 |
| v. | |
| UNDERWEST WESTSIDE OPERATING CORP., et. al., | |
| Defendants. | |

### JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is hereby entered into by and between Jean Hilaire, Jean Fresnel, Sualio Kamagate, Jean Vertus, Fousseimi Camara, Jean Morose, Noe Perez, Edgar Espinoza, Bolivio Chavez, Braulio Matamores Flores, Jeorge Ventura Concepcion, Angel Sandoval, Carlos De Leon Chiyal, and Lesley Pierre (the "Named Plaintiffs"), as well as all Class Members (as defined below) and by Underwest Westside Operating Corp., Moshe Winer, and Martin Taub, on behalf of all Defendants (as defined below).

### RECITALS AND BACKGROUND

WHEREAS, on April 9, 2019 the Named Plaintiffs filed a complaint against the Defendants under the FairLabor Standards Act ("FLSA") and the New York Labor Law ("NYLL") (the "Litigation");

WHEREAS, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, the Defendants have agreed to the dissemination of a notice of settlement pursuant to the Federal Rules of Civil Procedure to cover wage-and-hour claims to Class Members employed by the Defendants during the Relevant Period (as defined below);

WHEREAS, the purpose of this Agreement is to settle fully and finally all Claims (as defined below), between the Named Plaintiffs, all Class Members, and Defendants and Releasees (as defined below), including all claims asserted in the Litigation;

WHEREAS, Defendants deny all of the allegations made in the Litigation, and deny any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, without admitting or conceding that class and/or collective certification is warranted, and further without acknowledging or conceding any class or individual liability or damages whatsoever, and without admitting that any wages or overtime amounts were improperly calculated or withheld from any employees, the Defendants agree to settle the Litigation on the

terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Plaintiffs' Counsel have analyzed and evaluated the disputed facts, and merits of the Claims made against and defenses asserted by the Defendants, and concluded this Agreement is in the best interests of the Named Plaintiffs and all Class Members. Having considered the benefits of this Agreement for the Named Plaintiffs and all Class Members, based upon the analysis and evaluation of a number of sharply disputed facts, and having recognized the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any individual or class recovery whatsoever, or might result in a recovery that is less favorable or that may not realize any benefit for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate, and that this Agreement serves the best interests of the Named Plaintiffs and all Class Members; and

WHEREAS, the Parties, including legal counsel and their respective clients, have engaged in private settlement discussions through mediator Hunter R. Hughes III (the "Mediator");

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1. **"Litigation."**  The Litigation shall mean the above-captioned case filed in the United States District Court for the Southern District of New York, Case No. 19-CV-3169.

1.2. **"Administrator."**  The Administrator refers to the settlement claims administrator to be mutually selected by Class Counsel and Defendants' Counsel to disseminate the Notices as detailed herein and administer the Settlement Account.

1.3. **"Agreement."**  Agreement means this Joint Stipulation of Settlement and Release.

1.4. **"Bar Date."** The Bar Date shall mean the date by which any Class Member who wishes to qualify as a Claimant must file a Claim Form, which date shall be no later than sixty (60) days after the initial mailing of the Notice of Proposed Settlement by the Administrator.

1.5. **"Compensation/Benefits"** means any financial consideration or any form of benefit that Defendants have provided, offered, or otherwise made available to their respective eligible employees, including without limitation any form of

compensation, incentives, bonuses, pension benefits, welfare benefits, perquisites, awards, payments, or contributions; and specifically includes any payment, contribution, or increase to or for any ERISA or non-ERISA benefit, benefit level, or benefit plan (including without limitation any pension benefit plan (such as a defined benefit, defined contribution, 401(k) or profit sharing plan), or welfare benefit plan (such as a healthcare benefits, dental benefits, life insurance benefits, or disability benefits plan)).

1.6. **"Compensation/Benefits Plan"** means any written or unwritten plan, policy, practice, agreement, arrangement, understanding, contract, employee manual, summary plan description, or other document that provides, offers, describes, or summarizes any Compensation/Benefits.

1.7. "**Contingent Fund**" means the amount held in the Settlement Account as described in Section 3.1.3 and any uncashed Settlement Checks as described in Section 2.14.

1.8. **"Claim Form."** The Claim Form shall mean the form, a copy of which shall be attached to the Notice of Proposed Settlement, that the Class Members must sign and return post-marked by the Bar Date, together with properly completed, duly executed IRS Forms W-4 and W-9, in order to become Claimants and receive Settlement Checks. The Claim Form must be filed with the Administrator for a Class Member to be eligible for a distribution from the Settlement Account. The Claim Form is attached hereto as Exhibit B.

1.9. **"Claims."** Claims shall include all FLSA Claims, all State Law Claims, and all Released Claims made in or which could have been included in the Litigation.

1.10. **"Claimants."** Claimants shall include (i) all Named Plaintiffs; (ii) all FLSA Claimants; and (iii) all State Law Claimants.

1.11. **"Class" or "Class Member(s)."** "Class" or "Class Members" shall be defined as: Each former non-exempt employee of Underwest Westside Operating Corp. who worked during the period of April 9, 2013 through June 2, 2019, including but not limited to all Claimants, as defined in Sec. 1.10 above. The Class specifically excludes exempt management and executive employees of Defendants.

1.12. **"Class Counsel" or "Plaintiffs' Counsel."** Class Counsel or Plaintiffs' Counsel shall mean Steven Arenson, Esq. and Avi Mermelstein, Esq., Arenson Dittmar & Karban, 200 Park Avenue, Suite 1700, New York, New York 10166.

1.13. **"Class Member List."** The Class Member List shall mean the list of Class Members provided by Defendants in which Class Members are identified by, to the extent available to Defendants or their managers through reasonable efforts: (i) name; (ii) last known address; (iii) mobile phone number; (iv) hire and

termination date(s); and (v) job position. The Class Member List is to be used by the Administrator to effectuate the settlement of this Litigation, and may not be used for any other purpose.

1.14.    **"Court."** The Court shall mean the United States District Court for the Southern District of New York.

1.15.    **"Days."** Days shall mean calendar days.

1.16.    **"Defendants**." Defendants shall mean Underwest Westside Operating Corp., Moshe Winer, Martin Taub, Avihai Golan, and Elad Efrati.

1.17.    **"Defendants' Payroll Taxes."** Defendants' Payroll Taxes shall mean Underwest Westside Operating Corp.'s share of payroll taxes for wages paid to Claimants as part of this Agreement, including FICA, FUTA, SUTA, MCTMT, and any other employer's side payroll taxes required by law, which taxes are to be paid out of the Total Settlement Amount.

1.18.    **"Defense Counsel."** Defense Counsel shall mean Stephen D. Hans, Esq. and Nils C. Shillito, Esq., Stephen D. Hans & Associates, P.C., 30-30 Northern Boulevard, Suite 401, Long Island City, NY 11101.

1.19.    **"Fairness Hearing."** The Fairness Hearing shall mean the hearing before the Court relating to the final approval of the terms and conditions of this Agreement and the settlement of the Litigation, as described in Section 2.11 of this Agreement.

1.20.    **"Final Effective Date."** The Final Effective Date shall be the date that is (i) thirty (30) days after the entry of a Final Order approving this Agreement, with the time to appeal from such Final Order having expired and no notice of appeal or timely motion to extend the time to appeal having been filed; or (ii) if a timely notice of appeal has been filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision affirming the Final Order is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmanceof the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

1.21.    **"Final Order."** The Final Order shall mean the order entered by the Court after the Fairness Hearing, which shall, among other things, approve: (i) the terms and conditions of this Agreement; (ii) the distribution of the Settlement Checks; (iii) the amounts of professional fees and costs; and (iv) the dismissal of this Litigation with prejudice.

**1.22.** **"FLSA Claimants**." The FLSA Claimants shall mean all Class Members identified in Exhibit E to this Agreement, who have previously filed Consent to Join forms in this Litigation as of April 30, 2021. FLSA Claimants do not have to file a Claim Form to participate in this settlement, although they still must provide properly completed, duly executed IRS Forms W-4 and W-9.

**1.23.** **"FLSA Claims."** FLSA Claims shall mean all wage and hour claims that have been alleged pursuant to 29 U.S.C.A. §201-19, (the "Fair Labor Standards Act") in the Litigation.

**1.24.** **"Named Plaintiffs."** The Named Plaintiffs shall mean Jean Hilaire, Jean Fresnel, Sualio Kamagate, Jean Vertus, Fousseimi Camara, Jean Morose, Noe Perez, Edgar Espinoza, Bolivio Chavez, Braulio Matamores Flores, Jeorge Ventura Concepcion, Angel Sandoval, Carlos De Leon Chiyal, and Lesley Pierre. Named Plaintiffs do not have to file a Claim Form to participate in this settlement, although they still must provide properly completed, duly executed IRS Forms W-4 and W-9.

**1.25.** **"Net Settlement Amount."** Net Settlement Amount shall mean the amount remaining after deduction from the Total Settlement Amount of: (1) Class Counsel's attorneys' fees and costs; (2) the Administrator's fees; (3) Service Awards; (4) the Mediator's fees; and (5) Defendants' Payroll Taxes. The Net Settlement Amount shall be the amount available for potential distribution to those Class Members who choose to become Claimants in accordance with this Agreement. Only Claimants shall receive their pro rata shares of the Net Settlement Amount pursuant to this Agreement, and all funds in excess of the Minimum Distribution remaining from the Net Settlement Amount after the issuance of Settlement Checks to all Claimants shall revert to Defendants.

**1.26.** **"Notice" or "Notices."** Notice or Notices shall mean the Court–approved Notice of Proposed Settlement and Fairness Hearing, which shall include notices of an opportunity to opt-out and/or to object to the proposed settlement of this Litigation.

**1.27.** **"Objector."** An Objector shall mean any Class Member who properly files a written objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.28.** **"Opt-out Statement."** An Opt-out Statement is a signed written statement by a Class Member that such Class Member has decided to opt-out and not be included in this Agreement. Any Class Member who does not submit an Opt-out Statement is bound by this Agreement and waives and releases all State Law Claims, even if that person does not submit a Claim Form. A Class Member who submits an Opt-out Statement is not bound by this Agreement, and retains any FLSA Claims and/or State Law Claims that Class Member may possess.

1.29.   **"Party**." Party shall mean the Named Plaintiffs, Defendants, or Class Members, singularly, although it is understood that Defendants Avihai Golan a/k/a Avi Golan and Elad Efrati are not signatory parties to this Agreement.

1.30.   **"Parties**." The Parties shall mean the Named Plaintiffs, Defendants, and all Class Members, collectively, although it is understood that Defendants Avihai Golan a/k/a Avi Golan and Elad Efrati are not signatory parties to this Agreement.

1.31.   **"Preliminary Approval Order."** The Preliminary Approval Order shall mean the Order entered by the Court: (i) granting preliminary approval of the settlement of this Litigation; (ii) granting the Named Plaintiffs' Rule 23 Motion; (iii) approving the Notice and Claim Forms; (iv) directing the manner and timing of publishing and disseminating the Notice to the Class; and (v) scheduling the date and time for the Fairness Hearing.

1.32.   **"Relevant Period."** The Relevant Period shall mean any time between April 9, 2013 through June 2, 2019.

1.33.   **"Rule 23 Motion."** The Rule 23 Motion shall mean the Named Plaintiffs' motion for class action certification of the State Law Claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.

1.34.   **"Settlement Fund" or "Settlement Account**" shall mean a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank reasonably acceptable to Plaintiffs' Counsel and Defense Counsel. The Settlement Account shall contain the aggregate amount of funds necessary to satisfy all Claims, Defendants' Payroll Taxes, professional fees and costs as authorized by the Court in the Final Order, but in no event shall the amount contained in the Settlement Account exceed the Maximum Settlement Amount.

1.35.   **"Settlement Checks."** The Settlement Checks shall mean the checks issued to Claimants in accordance with this Agreement.

1.36.   **"State Law Claimants**." State Law Claimants shall mean those Class Members (i) who possess State Law Claims; (ii) who are eligible to receive a Settlement Check by virtue of having filed with the Administrator a Claim Form, together with properly completed, duly executed IRS Forms W-4 and W-9, by the Bar Date; and (iii) whose Claim is not rejected. State Law Claimants acknowledge that they agree to settle all Claims, including all FLSA Claims, all State Law Claims, and all Released Claims.

1.37.   **"State Law Claims."** State Law Claims shall mean all wage-and-hour claims that could have been alleged under New York law (including the New York Labor Law) or any other corresponding state wage-and-hour law(s) or

corresponding contractual, common law or equitable claims arising out of or related to the Claims by or on behalf of the Class, but does not include FLSA Claims.

1.38. **"Total Settlement Amount" or "Maximum Settlement Amount"** shall mean the maximum aggregate amount that can be paid by Defendants pursuant to this Agreement and includes professional fees, costs and expenses and Defendants' Payroll Taxes. Under no circumstances shall the Total Settlement Fund exceed $1,219,885.73.

## 2. INITIAL PROCEDURAL ISSUES

2.1. **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

2.2. **State Law Settlement.** For purposes of settlement only, the Parties stipulate that all Class Members possessing State Law Claims during the Relevant Period are covered by this Agreement.

2.3. **Retention of the Administrator.** The Parties shall engage an Administrator, who is mutually agreeable to both sides, to effectuate the settlement. The Administrator shall be paid from the Total Settlement Amount.

2.4. **Responsibilities of the Administrator**. The Administrator shall be responsible for:

(A) preparing, printing and disseminating the Notice and Claim Forms, and accompanying IRS Forms W-4 and W-9, to the Class via First-Class United States Mail;

(B) sending copies of all material correspondence to counsel for all Parties, and promptly notifying counsel for all Parties of any material requests or communications made by any Party;

(C) promptly furnishing to counsel for all Parties copies of all Opt-out Statements, objections or other written or electronic communications from the Class which the Administrator receives;

(D) receiving and reviewing the Claim Forms and accompanying IRS Forms W-4 and W-9 submitted by Class Members, including maintaining the original mailing envelopes (and preserving the post-mark on such envelopes) in which the Claim Forms and tax forms were mailed, and stamping each Claim Form and envelope with a date-stamp showing the date such Claim Form and envelope were received;

(E) deciding whether submitted Claim Forms and accompanying IRS Forms W-4 and W-9 meet the requirements for submitting Class Members to be considered eligible for a distribution from the Settlement Account;

(F) keeping track of Opt-out Statements, including maintaining the original mailing envelopes (and preserving the post-mark on such envelopes) in which the Opt-out Statements were mailed and stamping each Opt-out Statement and envelope with a date-stamp showing the date such Opt-out Statement and envelope were received;

(G) to the extent reasonably possible, ascertaining the current address and addressee information for each Notice and Claim Form returned as undeliverable;

(H) responding to inquiries of the Class regarding procedures for filing objections, Opt-out Statements, and Claim Forms;

(I) referring to Class Counsel and Defendants' Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

(J) responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties specified herein;

(K) promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

(L) maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and mailing and receipt of Claim Form(s) and accompanying IRS Forms W-4 and W-9, returned mail and other communications and attempted written or electronic communications with the Class;

(M) confirming in writing to Plaintiffs' Counsel and Defense Counsel its completion of the administration of the settlement;

(N) timely responding to communications from the Parties or their counsel;

(O) preparing and disseminating reports to Class Counsel and Defendants' Counsel regarding Claims made and Claims administration on a weekly basis through the Final Effective Date and on a monthly basis during the period of time that the Contingent Fund is held;

(P) preparing and serving CAFA notices and all necessary accompanying documents and information;

(Q) running all names and addresses of Class Members through the National Change of Address Database to update and addresses and preforming skip tracing for all returned Notices;

(R) Preparing and filing all tax documentation;

(S) Calculating the payments to the Claimants with advice from and subject to agreement by Class Counsel and Defendants' Counsel;

(T) Distributing the Settlement Checks as set forth in Section 2.13;

(U) Advising the Parties when a submitted Claim Form requests a review of whether the subject Claimant worked an average weekly number of hours in excess of 54 hours per week and selecting at random five (5) weekly pay periods

from such Claimant's period of employment for the purpose of calculating the average weekly number of hours worked for such Claimant;

(V)   Such other tasks as are stated in this Agreement or which may be mutually agreed upon.

In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall provide to Plaintiffs' Counsel and to Defense Counsel (a) a list of all Class Members who timely filed their Claim Forms; (b) a list of all Objectors who filed timely objections; (c) a list of all Class Members who did not file a Claim Form; and, (d) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period. The Administrator shall also provide the Parties with an updated address list for the Class. Throughout the period of claims administration, the Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices and Claim Forms to the Class, the claims administration process, and distribution of the Settlement Checks, or any other aspect of the claims administration process.

**2.5.**    **Notice.** The Notice will inform Class Members about this settlement and will also advise them of the opportunity to object to, opt-out of, or file a Claim Form pursuant to this Agreement, and/or to appear at the Fairness Hearing.  Within thirty (30) days of the entry of the Preliminary Approval Order by the Court, the Administrator will mail to all Class Members, via First-Class United States Mail, the Court–approved Notice of Proposed Settlement and Fairness Hearing (a copy of which is annexed as Exhibit A to this Agreement). The mailing will include the Notice and Claim Form, each translated into Spanish, French, and Haitian-Creole.  The Administrator shall also include blank copies of IRS Forms W-4 and W-9 and instructions for their proper completion together with each mailed Claim Form.  Prior to sending notices, the Administrator will run all Class Member names and addresses through the National Change of Address Database to update any addresses. The Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom a Notice and Claim Form is returned by the United States Postal Service as undeliverable, including one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address or possesses more than one (1) address. The Administrator will notify Plaintiffs' Counsel and Defense Counsel of any Notice and Claim Form sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. Class Counsel will notify the Administrator and Defense Counsel if it receives any updated addresses.

At the time of the initial mailing, the Administrator will message all Class Members via WhatsApp for whom it obtains phone numbers from the Class Member List or Class Counsel with a message in the form approved by the Court (Exhibit C hereto), translated into Spanish, French, and Haitian-Creole.

2.6.  **Access to the Administrator**. The Parties will have equal access to the Administrator throughout the claims administration period. Plaintiffs' Counsel and Defense Counsel agree to provide the Administrator with all accurate information reasonably available to reasonably assist the Administrator in locating the Class.

2.7.  **The Preliminary Approval Order**

2.7.1.  Plaintiffs' Counsel shall apply to the Court for the issuance of the proposed Preliminary Approval Order, which shall, among other things, authorize the dissemination of the proposed Notice and Claim Form. The proposed Notice of Proposed Settlement and Fairness Hearing, Claim Form, Text Message Notice, and Proposed Preliminary Approval Order approved by the Parties are annexed hereto and made a part of this Agreement as Exhibit A, Exhibit B, Exhibit C, and Exhibit D, respectively. Defendants will not oppose such motion.

2.7.2.  Plaintiffs' Counsel also shall make the Rule 23 Motion with respect to the State Law Claims. The Preliminary Approval Order shall also grant class action certification of the State Law Claims, solely for purposes of effectuating the settlement of the Litigation.

2.7.3.  The proposed Preliminary Approval Order shall set a deadline of sixty (60) days from the initial mailing of Notice and Claim Forms to the Class: (a) for Class Members to submit Claim Forms, (b) to file Opt-out Statements, and/or (c) to become Objectors.

2.7.4.  The proposed Preliminary Approval Order shall also set a date for the Fairness Hearing for the final approval of the settlement, which shall be no earlier than one hundred and twenty (120) days following the date that the Court enters the proposed Preliminary Approval Order.

2.7.5.  Plaintiffs' Counsel will inform the Court of the intended process to obtain the Final Order and the Final Judgment and Dismissal that will, among other things:
(1) approve the terms and conditions of settlement and this Agreement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation; and (4) award Plaintiffs' Counsel their professional fees, expenses and costs.

2.7.6.  **Cooperation**: The Parties will cooperate to effectuate the settlement and the Court's approval, including with respect to the filing of any motion with the Court.

**2.8.    Notice and Claim Forms to Class**

2.8.1.   Within fifteen (15) days of the Court's entry of the Preliminary Approval Order, Defendants' Counsel will provide the Administrator and Plaintiffs' Counsel with the Class Member List, in electronic format. All information provided regarding the Class will be treated as confidential information by Plaintiffs' Counsel and the Administrator. Said information will not be used by Plaintiffs' Counsel and the Administrator for any purpose other than to effectuate the terms of the settlement of this Litigation.

2.8.2.   The Claim Form will provide each prospective Claimant with an opportunity to challenge the assumption that the Claimant worked 54 hours per week on average during the course of their prior employment by Underwest Westside Operating Corp.  For those Claimants who assert such a challenge on their Claim Form, the Administrator shall select five (5) random weekly pay periods from throughout the Claimant's entire period of employment and shall advise Class Counsel and Defense Counsel of such selected weekly pay periods.  Defendants shall then promptly provide the Administrator with the number of total hours worked by such a Claimant during each of the randomly selected weekly pay periods, and the Administrator shall use such data to calculate the number of points to be allocated to such a Claimant, which could be either more or less than the number of points previously allocated to such a Claimant before such Claimant chose to challenge the assumption of 54 average hours worked per week.

2.8.3.   Class Members will have sixty (60) days from the date of the initial mailing to return the Claim Form and accompanying IRS Forms W-4 and W-9 and become a Claimant. To be effective, a Claim Form must be post-marked by the Court-authorized Bar Date, or must be received by the Administrator on or by the Court-authorized Bar Date. To the extent that an envelope does not contain a post-mark, the date that the Administrator stamps the envelope or Claim Form as "received," shall apply.

2.8.4.   Class Members who fail to file a Claim Form by the Bar Date shall have an additional fifteen (15) days in which to file if such Class Member can show that good cause, such as hospitalization, change of address, prolonged absence during the Notice Period from the residence where the Claim Form was sent, or military service, prevented the timely filing of a Claim Form.

**2.9.    Opt-outs.**

2.9.1.    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail, via First-Class United States Mail, postage prepaid, a signed written statement to the Administrator that such Class Member is opting out of the settlement (the "Opt-out Statement"). The Opt-out Statement must include the Class Member's name, address, and telephone numbers, and must contain an unambiguous statement indicating his or her intention to opt-out of this settlement, such as: "I opt out of the Hilaire case." To be effective, an Opt-out Statement must be post-marked or received by the Administrator by the Bar Date.

2.9.2.    The end of the time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

2.9.3.    The Administrator will send a final list of all Opt-out Statements to Plaintiffs' Counsel and Defense Counsel before the Fairness Hearing. The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

2.9.4.    Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement; will be bound by the Final Approval Order in this case; and will have any State Law Claims released and dismissed. Only those Class Members who timely complete and return a Claim Form post-marked by the Bar Date will be deemed authorized to participate in this settlement as a "Claimant." Defendants shall have no obligation to pay any Class Member who possesses a State Law Claim if he or she does not submit a timely Claim Form and accompanying IRS Forms W-4 and W-9 as set forth in this Agreement.

2.9.5.    For purposes of this Agreement, the Named Plaintiffs and FLSA Claimants are deemed to be Claimants, and are not required to file an additional Claim Form to participate in this settlement, unless they opt-out in accordance with the terms of this Agreement. However, Named Plaintiffs and FLSA Claimants must still provide properly completed, duly executed IRS Forms W-4 and W-9 to the Administrator in order to participate in this settlement.

**2.10.    Objections to Settlement.**

2.10.1. Objectors who wish to present objections to the proposed settlement

at the Fairness Hearing must first do so in a written statement. To be considered, such written statement must be mailed to the Administrator via First-Class United States Mail, post-marked by the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone numbers for the Class Member making the objection. The Administrator will stamp the date received on the original objection, create electronic copies of such objection and all supporting documentation, and send copies of each objection, together with allsupporting documentation, to Plaintiffs' Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection.

2.10.2. An Objector also has the right to appear at the Fairness Hearing, either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state their intention to appear in writing at the time the objection is submitted. An Objector may withdraw their objection at any time. An Objector is a Class Member; the filing of an objection does not constitute the filing of an Opt-out Statement by such Class Member/Objector.

**2.11.** **Fairness Hearing and Motion for Final Approval and Dismissal.** At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the terms and conditions of the settlement and this Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to the Claimants; (3) approve the amount and order the payment of attorneys' fees, expenses and costs to Plaintiffs' Counsel; (4) approve the amount and order the payment of Service Awards as set forth in Section 3.3; (5) order the dismissal with prejudice of all State Law Claims by all Class Members who did not opt-out; (6) order the dismissal with prejudice of all FLSA Claims and State Law Claims by all Claimants; (7) order entry of Final Judgment in accordance with this Agreement; and (8) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.12.** **Funding of Settlement Account.** Within ten (10) days after the Final Effective Date, Defendants shall cause the following amounts to be paid to the Administrator for distribution as set forth herein: the Net Settlement Amount, approved Attorneys' fees and costs, Service Awards and Defendants' Payroll taxes. All Parties acknowledge and agree that Avihai Golan a/k/a Avi Golan and Elad Efrati are not parties to this Agreement and are not individually responsible for the funding or payment of any portion of the Total Settlement Amount. Accordingly, Named Plaintiffs, Claimants, Class Members, and Class Counsel shall have no recourse whatsoever against either Avihai Golan a/k/a Avi Golan

or Elad Efrati for any breach of this Agreement by the Defendants.

2.13. **Distribution of Settlement Checks**. The Settlement Checks will be distributed as follows: Within ten (10) days of receipt of the Net Settlement Amount, the Claims Administrator (i) shall send Settlement Checks to Arenson, Dittmar & Karban for distribution to all clients who retained Arenson, Dittmar & Karban and/or filed consents to join as of April 30, 2021; Claimants who checked the box on their Claim Form requesting to pick up their checks in person, and Claimants who contacted the Claims Administrator to request to pick up their checks in person; and otherwise (ii) shall send Settlement Checks to all other Claimants who have submitted timely and valid Claim Forms.

2.14. **Stale Checks and the Contingent Fund.** After 120 days, in the event that there are any stale checks attributable to any Claimants, those Settlement Checks shall be voided. The releases contained in this Agreement shall remain binding upon Claimants whose checks are voided. Any unclaimed funds resulting from such voided Settlement Checks shall be held in the Contingent Fund and shall be available to be reissued by way of replacement check until June 30, 2022, after which date, said funds shall be distributed to Defendants.

2.15. **Inclusion of Release on Settlement Checks.** The Settlement Checks shall contain the following release language on the back of each Settlement Check, including the checks for the Service Awards: "My signature on or negotiation of this check constitutes a full, final, and complete release by me of all Released Claims and FLSA Claims against Defendants and Releasees, in accordance with the Joint Stipulation and Settlement Agreement entered in the matter entitled *Jean Hilaire et al. v. Underwest Westside Operating Corp. et al.*, USDC SDNY, Case No. 10-CV-3169."

2.16. **Payment of Fees and Expenses**. Within ten (10) days of receipt of the Net Settlement Amount, the Claims Administrator shall send checks to pay for all approved professional fees and expenses for Plaintiffs' Counsel to Plaintiffs' Counsel; and shall send checks to Arenson, Dittmar & Karban for distribution to the Claimants for whom the Court has approved Service Awards.

## 3. SETTLEMENT TERMS

3.1. **Settlement Fund Computation and Allocations to Claimants.**

   3.1.1. **Maximum Payment**. The Parties expressly acknowledge that Defendants shall not be required to pay more than the Maximum Settlement Amount in satisfaction of all obligations under this Agreement.

   3.1.2. **Distribution of Settlement Fund to Claimants.** Individual Claimants' shares of the Net Settlement Amount shall be based on the

submitted and accepted Claim Forms and shall be distributed as follows: Class Members who submit a valid and timely claim form shall receive the greater of: (a) their pro rata allocation based on the weeks worked allocation formula as set forth in Exhibit G, or (b) $50.00.

3.1.3.  **Minimum Distribution**.  There shall be a minimum distribution of $300,000.00 from the Net Settlement Amount to Claimants (the "Minimum Distribution").  Following the initial distribution of Settlement Checks there shall be created a set aside in the Contingent Fund  for FLSA claims filed after the Bar Date in an amount equal to the difference between the Minimum Distribution and the amount paid out to Claimants which shall be held by the Administrator until June 30, 2022 to address late FLSA claims.[1]  On or about July 14, 2022: (i) any funds remaining in the Settlement Account attributable to the Minimum Distribution shall be distributed pro rata to participating Claimants excluding Claimants who received only the $50.00 minimum payment; (ii) all other monies remaining in the Settlement Account shall be distributed to Defendants.

3.2.  **Professional Fees and Costs.**  At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees not to exceed Four Hundred Six Thousand Six Hundred Twenty-Eight Dollars and Zero Cents ($406,628.00) and for costs (including reimbursement of Class Counsel's actual expenses in this Litigation and the Mediators' fees and costs) not to exceed Twenty-Two Thousand Five Hundred Dollars and Zero Cents ($22,500.00) and Administrator costs in an amount to be determined based upon actual costs incurred and anticipated through final distributions from the Settlement Account.  These professional fees and costs shall be paid from the Total Settlement Amount. Defendants will not oppose such application, including any appeal or request for reconsideration if the application is denied or modified by the Court. Class Counsel's application for attorneys' fees and costs is not part of this Agreement as between Defendants and the Class and, although an obligation solely of the Class and not Defendants, is considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not increase the amount of the Maximum Settlement Amount, terminate this Agreement or otherwise affect the Court's final approval of this Agreement. Any fees or costs sought by Class Counsel but not approved by the Court shall become part of the Net Settlement Amount available to be distributed to Claimants.

3.3  **Portion of Settlement Amount Payable as Service Awards**. In return for the risks they incurred and the services they rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs will each apply to the Court for a service

---

[1] In the event that the aggregate amount of Settlement Checks distributed to all Claimants equals or exceeds the Minimum Distribution, no set-aside is required.

award not to exceed Five Thousand Dollars ($5,000) for a total not to exceed Seventy Thousand Dollars ($70,000) ("Service Award(s)"). All such Service Awards will be paid from the Total Settlement Amount. Named Plaintiffs are eligible for only one Service Award each, regardless of whether they may have claims against more than one Defendant. Defendants will not oppose these applications. As a necessary precondition to receipt of a Service Award, each recipient of a Named Plaintiff Service Award agrees to execute a separate settlement agreement and general release of claims (the "Supplemental Settlement Agreements") in the form annexed hereto as Exhibit F. The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for the Named Plaintiff Service Awards will not terminate this Agreement or provide any basis for terminating the Agreement, or otherwise affect the Court's ruling on the Motion for Final Approval.

3.4    **Settlement Payments Do Not Trigger Additional Benefits or Incentives.** All payments to Class Members shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members. The Parties agree and the Class Members acknowledge that the payments provided for in this Agreement are the sole payments to be made to the Class Members in connection with this Agreement, the Litigation, and the settlement thereof, and that the Class Members are not entitled to any new, additional, or increased Compensation/Benefits as a result of having received such payments, notwithstanding any Compensation/Benefits Plan that was or is in effect during the Relevant Period covered by this settlement. The Parties further agree, and Class Members acknowledge, that this Agreement (i) does not constitute the amendment, modification, reformation, or change to any employment terms or conditions, or to any Compensation/Benefits Plan, and (ii) does not require any released party to amend, modify, reform, or change any employment terms or conditions, or any Compensation/Benefits Plan.

3.5    **Tax Characterization.**

3.5.1. The Administrator shall be responsible for preparing the individual Settlement Checks for Claimants, the checks to pay the professional fees and costs of Plaintiffs' Counsel, the checks to pay the Mediator's fees, and the checks to pay Defendants' Payroll Taxes and any other taxes due on any portion of the amount of the Settlement Checks.

3.5.2. Solely for tax purposes and not as an admission of liability or otherwise, 42% of payments to Claimants pursuant to Section 3.1 shall be treated as back wages; and 58% of payments to Claimants pursuant to Section 3.1 shall be treated as interest, liquidated damages, and/or penalties paid pursuant to the Agreement.

3.5.3. Payments treated as back wages shall be subject to all applicable employment taxes, including without limitation federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security Number or Taxpayer Identification Number ("TIN") on an IRS Form W-2. Payments treated as interest and/or liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's Social Security Number or TIN on IRS Form 1099.

3.5.4. Payments of attorneys' fees and costs shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

3.5.5. Payments made as Service Awards shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and Social Security Number or TIN on an IRS Form 1099.

3.5.6. The Administrator shall be responsible for preparing and providing all W-2 reporting and forms as well as all IRS Forms 1099.

3.5.7. As a necessary precondition for receiving a Settlement Check, every Claimant must submit properly completed, duly executed IRS Forms W-4 and W-9 to the Administrator together with their Claim Form.

**3.6    Tax Indemnity.**

3.6.1. For payments received pursuant to this Agreement, Claimants assume full responsibility for any and all federal, state and local taxes or contributions that may be imposed or are required to be paid under any federal, state, or local law of any kind. The Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations. If the IRS or any other federal, state or local government, administrative agency or court determines that any individual Claimant and/or any Defendant is liable for any failure by any Claimant and/or Defendant to pay federal, state or local income, employment or payroll taxes with respect to any payment received pursuant to this settlement, Claimants shall hold Defendants harmless and shall indemnify Defendants from any payments Defendants may be required to make (including any payments for interest and penalties) to any taxing authority resulting from any Claimant's failure to pay any tax(es) that any such individual or entity owes related to said payment(s).

3.6.2.  If the IRS or any other federal, state or local government, administrative agency or court determines that any Defendant is liable for any failure by any Claimant to pay federal, state or local income, employment or payroll taxes with respect to any payment received pursuant to this settlement under the applicable provisions of this Section 3.6 (a "Tax Claim"), then Defendants shall give written notice of such Tax Claim to Class Counsel within seven (7) days of receipt. Defendants and/or Defense Counsel shall provide Claimants and/or Class Counsel with a reasonable opportunity to cure such Tax Claim before making a claim for indemnity pursuant to this indemnification provision. Defendants and/or Defense Counsel shall reasonably cooperate with Claimants and/or Class Counsel, to the extent possible, to cure such Tax Claim and minimize the costs associated with this indemnity.

## 4. RELEASE

### 4.1. Release of Claims and Covenant Not to Sue.

4.1.1.  Upon issuance of the Final Order, and except as to such rights held under the Fair Labor Standards Act or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on  his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, assignees, executors, administrators, agents, and attorneys, fully releases and discharges Defendants, Defendants' present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns (including Moshe Winer, Tal Winer, Martin Taub, Barak Taub, Lior Ronner (Ronen), Avihai Golan, and Elad Efrati), and all persons or entities acting by, through, under or in concert with any of them, and any individual, including but not limited to former and future heirs, spouses, assignees, executors, administrators, agents, and attorneys, or entity which could be jointly liable with any of them (collectively, the "Releasees"), for any and all claims for any wage-and-hour violations under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, minimum wages, tips, tip credits/allowances, gratuities, service charges, commissions, administrative or other mandatory charges, overtime pay, spread-of-hours pay, failure to maintain and furnish employees with proper wage records, wage notices, and/or wage statements, meal break claims, all derivative benefit claims (both ERISA and non-ERISA benefits); all other corresponding claims arising out of any state or local wage laws,  all corresponding contractual, common law or equitable claims, and any right to arbitrate said claims that were or could have been alleged in the Litigation, whether known or

unknown, under federal, state, and/or local wage-and-hour laws (including but not limited to the New York Labor Law and related regulations), through April 30, 2021 ("Released Claims"). This release includes all claims for all damages arising from any such Released Claims, including but not limited to claims for liquidated damages, interest, statutory penalties, and attorneys' fees' and costs.

**4.1.2.** Each Claimant forever and fully releases Releasees from all Claims, including all State Law Claims, all FLSA claims, and all Released Claims.

**4.1.3.** By operation of the entry of the Final Order and the Final Judgment and Dismissal, and except as to such rights or claims as may be created by this Agreement, each Claimant forever and fully releases Releasees from all Claims as detailed herein.

**4.1.4. No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any Claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**4.1.5. Non-Admission of Liability.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Named Plaintiffs, Claimants and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with the Named Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding. The Parties understand and acknowledge that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

**4.1.6.  Covenant Not to Sue**: In addition to the above release, the Claimants agree not to sue any or all of the Releasees in any forum for any claim covered by the releases in Section 4 except that they may bring a claim to enforce this Agreement.  The Claimants also agree not to participate in any class or collective action against any or all of the Releasees for any claim covered by Section 4.1 but the foregoing does not bar participation in such matters with regard to any claim not covered by Section 4.

**4.1.7.**  Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Plaintiffs' Counsel, all Claimants and the Class hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of the Class. Plaintiffs' Counsel further acknowledges that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Plaintiffs' Counsel's representation in the Litigation and shall be paid solely from the Total Settlement Amount.

**4.1.8.**  Notwithstanding any provision to the contrary, any Class Member who does not become a Claimant as defined herein shall not be deemed to have relinquished any rights he or she may possess under the Fair Labor StandardsAct.

## 5  NON-DISCLOSURE AND PUBLICITY.

5.1    Prior to submission of the Agreement to the Court for preliminary approval, the Parties and their counsel will keep the terms, conditions, and existence of the settlement and this Agreement strictly confidential, and will not contact, or comment to, the media about the settlement or this Agreement, or disclose, make known, discuss, or relay orally or in writing, electronically or otherwise, the existence or terms of the settlement or this Agreement, or any information concerning or discussions leading up to the settlement or this Agreement.

5.2    Any communication about the settlement to Class Members other than those who have already retained Arenson, Dittmar & Karban prior to the Court-approved mailing will be limited to a statement that a settlement has been reached and that the details will be communicated in a forthcoming Court-approved notice.

5.3    Defendants, Defendants' agents, and Defendants' Counsel will not communicate with Class Members concerning the proposed settlement except to refer inquiring Class Members to the Administrator. In the event

that a Named Plaintiff is asked about the settlement, they will direct such inquiry to the Administrator or Class Counsel.

5.4     Nothing in this Agreement shall prohibit Class Counsel or Defendants' Counsel from disclosing information concerning this Agreement to the Administrator, their employees, or their agents to effectuate the terms of this Agreement.   Moreover, nothing in this Agreement shall prohibit Defendants from disclosing information concerning this Agreement to their employees or agents to the extent necessary to effectuate the terms of this Agreement or to other individuals who otherwise have a need to know the terms of this Agreement.   The Parties may also disclose information concerning this Agreement to their respective counsel and tax, audit, and legal advisors.

5.5     Nothing in this Agreement shall prevent Defendants or Defendants' Counsel from making any necessary, appropriate, or required disclosures to Defendants' regulators, auditors, bankers, and the like, or from complying with their obligations under the law.

5.6     Class Counsel will promptly notify Defendants' Counsel of any third-party legal demand that they disclose information pertinent to the settlement or this Agreement.

## 6.  EFFECT OF FAILURE TO GRANT FINAL APPROVAL

6.1.    **<u>Effect of Failure to Grant Final Approval</u>:**  The Agreement and payment of the Settlement Amount are contingent upon the Court's approval of the Settlement and this Agreement.  In the event:  (1) the Court fails to enter a Final Approval Order approving the settlement (failure by the Court or an appellate court to award or sustain the full amount of the Service Awards or Plaintiffs' counsel's attorneys' fees and expenses will not constitute failure to approve the settlement or a material modification of the settlement); and (2) either (a) a Party does not seek reconsideration or appellate review of the decision denying entry of the Judgment, or (b) the Parties do not attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement, then the settlement and this Agreement will become null and void *ab initio*.

6.2.    In the event the settlement and this Agreement become null and void:

(i)    The Parties shall have no further rights or obligations under this Agreement or the Supplemental Settlement Agreements and the pleadings shall revert to *status quo ante* and Defendants shall maintain all rights and defenses including the right to contest certification.

(ii)    The Litigation will proceed as if no settlement had been attempted.  In such a case, the Parties will negotiate and submit for Court approval a case

management schedule.

(iii) Notice will be provided to Claimants that the Agreement did not receive final approval and that, as a result, no payments will be made to Claimants under the Agreement. Such notice shall be sent by the Administrator in the same matter that Notices were issued under this Agreement to the addresses used by the Administrator in mailing the Notice.

(iv) The Parties will equally share payment of the fees and costs reasonably incurred to date by the Administrator, including the mailing of the notices specified herein.

(v) This Agreement (including Exhibits) will not be used for any purpose whatsoever, including precluding use in connection with the Litigation, and/or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint.

## 7.  INTERPRETATION AND ENFORCEMENT

**7.1.  Cooperation Between the Parties; Further Acts**. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, shall perform such further acts and shall execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**7.2.  Entire Agreement.** This Agreement, together with all of the exhibits attached hereto and incorporated by reference, constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations andunderstandings between the Parties shall be deemed merged into this Agreement.

**7.3.  Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and the Class, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**7.4.  Arms' Length Transaction.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length through their respective counsel.

**7.5.  Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon theconstruction or interpretation of any part of this Agreement.

**7.6.  Construction.**  The determination of the terms and conditions of this Agreement has beenby mutual agreement of the Parties. Each Party participated jointly in

the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

7.7.    **Severability.** If any provision of this Agreement is held to be void, voidable, unlawful or unenforceable by a court of competent jurisdiction, the remaining portions of this Agreement will remain in full force and effect. Notwithstanding the foregoing: (i) upon any finding by a court of competent jurisdiction that the payment obligations contained in Sections 3.1 and 3.2 of this Agreement  or the Releases and Covenant Not To Sue contained in Section 4 are illegal, void or unenforceable, this Agreement and the promises contained in it shall automatically be null and void *ab initio*, at which time this Agreement shall terminate and the Litigation shall proceed in accordance with Section 6.

7.8.    **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York without regard to its choice of law provisions, except to the extent that the law of the United States govern any matter set forth herein, in which case such federal law shall govern.

7.9.    **Reference of Disputes to Mediator.**  The Parties agree that, in the event of any dispute arising out of the settlement or this Agreement, they shall first make a good faith effort to resolve it on their own.  If they are unable to resolve the dispute, the Parties will attempt in good faith to resolve any such dispute before the Mediator, Hunter R. Hughes III, Esq. or if Mr. Hughes is unable to serve before another mutually agreeable mediator.  In the event that the Mediator determines that he is unable to resolve any such dispute, then the Parties agree that the Court and the appropriate appellate courts shall have exclusive jurisdiction to hear and resolve any dispute.

7.10.   **Waivers, etc. to Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties,and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to demand the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to demand the specific performance of any and all of the provisions of this Agreement.

7.11.   **When Agreement Becomes Effective; Counterparts**. This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**7.12.** **Facsimile and Email Signatures.** Any Party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon theParty whose counsel transmits the signature page by facsimile or email.

*{signature pages follow}*

**IN WITNESS WHEREOF**, the Parties hereto have knowingly and voluntarily executed this Agreement before authorized notaries public as of the dates set forth beneath their respective signatures below:

**PLAINTIFFS:**

STATE OF _____ NY _____ )

⎱ ss:

COUNTY OF _____ Kings _____ )

I, **JEAN HILAIRE**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

_____
JEAN HILAIRE

Sworn to before me this
31 Day of 07 , 2021

_____

Notary Public

```
CASSANDRE NELSON
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01NE6304195
Qualified in Queens County
Commission Expires May 27, 2022
```

STATE OF _____ NY _____ )

⎱ ss:

COUNTY OF _____ Kings _____ )

I, **JEAN FRESNEL**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

STATE OF _Higuey Altagracia_

COUNTY OF _Dominican Republic_ ) ss:

I, **JEAN FRESNEL**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this
__29__ Day of __July__ , 2021

_Lic. Manuel De Jesus Guerrero_
**Notary Public**
Higuey Dominican Republic

_JEAN FRESNEL_
Pass port UY4020765

LIC. MANUEL DE JESÚS GUERRERO
NOTARIO PÚBLICO

STATE OF _NEW YORK_ )
                        ) ss:
COUNTY OF _New York_ )

I, **FOUSSENI CAMARA**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this
__28th__ Day of __July__ , 2021

**Notary Public**

FOUSSENI
**FOUSSENI CAMARA**

AVI MERMELSTEIN
Notary Public - State of New York
No. 02ME6374115
Qualified in Bronx County
My Commission Expires April 23, 2022

Sworn to before me this

_____ Day of _____, 2021

JEAN FRESNEL

_____

Notary Public

STATE OF *New York* )

                        ) ss:

COUNTY OF *New York* )

I, **SUALIO KAMAGATE**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

SUALIO KAMAGATE

Sworn to before me this

*26ᵗʰ* Day of *July* , 2021

Notary Public

AVI MERMELSTEIN
Notary Public, State of New York
No. 02ME6374115
Qualified in Bronx County
My Commission Expires April 23, 2022

STATE OF _____ )

                        ) ss:

COUNTY OF _Kings_ )

I, **JEAN VERTUS**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this
_31_ Day of _07_, 2021                          _Jean L Vertus_
                                                 JEAN VERTUS

_____
Notary Public

CASSANDRE NELSON
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01NE6304195
Qualified in Queens County
Commission Expires May 27, 2022

STATE OF _____ )
                       ) ss:
COUNTY OF _____ )

I, **FOUSSEIMI CAMARA**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this                         _____
_____ Day of _____, 2021                  FOUSSEIMI CAMARA

_____
Notary Public

STATE OF _____ NY _____ )

)  ss:

COUNTY OF _____ Kings _____ )

I, **JEAN MOROSE**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this

31  Day of  O  , 2021

_____

Notary Public

CASSANDRE NELSON
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01NE6304195
Qualified in Queens County
Commission Expires May 27, 2022

_____
JEAN MOROSE

STATE OF _____ )

)  ss:

COUNTY OF _____ )

I, **NOE PEREZ a/k/a NOE PEREZ GUTIERREZ**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this

_____
NOE PEREZ a/k/a Noe Perez Gutierrez

STATE OF _____ )

                              ) ss:

COUNTY OF _____ )

I, **JEAN MOROSE**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this                            _____
_____ Day of _____, 2021            JEAN MOROSE

_____

Notary Public

STATE OF _NEW YORK_ )

                              ) ss:

COUNTY OF _NEW YORK_ )

I, **NOE PEREZ a/k/a NOE PEREZ GUTIERREZ**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this                            _____
                                                   NOE PEREZ a/k/a Noe Perez Gutierrez

RAFAEL BEAUMONT
Notary Public, State of New York
No. 01BE4970280
Qualified in New York County
Commission Expires February 19, 2022

2ⁿᵈ Day of AUGUST , 2021

_Rafael Beaumont_

Notary Public


STATE OF  NEW YORK  )

                           ) ss:

COUNTY OF  New York  )


I, **EDGAR ESPINOZA**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

RAFAEL BEAUMONT
Notary Public, State of New York
No. 01BE4970280
Qualified in New York County
Commission Expires February 19, 2022

Sworn to before me this
2ⁿᵈ Day of AUGUST , 2021

_Rafael Beaumont_

Notary Public

_____
EDGAR ESPINOZA


STATE OF  NEW YORK  )

                           ) ss:

COUNTY OF  New York  )

I, **BOLIVIO CHAVEZ a/k/a POLIVIO CHAVEZ**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this

2ND Day of AUGUST ____, 2021

Notary Public

_____
BOLIVIO CHAVEZ a/k/a Polivio Chavez

STATE OF NEW YORK )

                                      ) ss:

COUNTY OF NEW YORK )

I, **BRAULIO MATAMORES FLORES**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this

2ND Day of AUGUST ____, 2021

Notary Public

_____
BRAULIO MATAMORES FLORES

RAFAEL BEAUMONT
Notary Public, State of New York
No. 01BE4970280
Qualified in New York County
Commission Expires February 19, 2022

STATE OF _New York_ )

                        ) ss:

COUNTY OF _New York_ )


I, **JEORGE VENTURA CONCEPCION**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.


Sworn to before me this

2ⁿᵈ Day of _August_ , 2021

                                        JEORGE VENTURA CONCEPCION

RAFAEL BEAUMONT
Notary Public, State of New York
No. 01BE4970280
Qualified in New York County
Commission Expires February 19, 2022


STATE OF _New York_ )

                        ) ss:

COUNTY OF _New York_ )


I, **ANGEL SANDOVAL**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

                                        ANGEL SANDOVAL

Sworn to before me this

2ⁿᵈ Day of _August_ , 2021

_Rafael Beaumont_

Notary Public

RAFAEL BEAUMONT
Notary Public, State of New York
No. 01BE4970280
Qualified in New York County
Commission Expires February 19, 2022

STATE OF _NEW YORK_ )
                       ) ss:
COUNTY OF _N_      )

I, **CARLOS DE LEON CHIYAL**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this
_2ND_ Day of _AUGUST_, 2021

_Rafael Beaumont_

RAFAEL BEAUMONT
Notary Public, State of New York
No. 01BE4970280
Qualified in New York County
Commission Expires February 19, 2021

CARLOS DE LEON CHIYAL

STATE OF _____ )
                       ) ss:
COUNTY OF _____ )

I, **LESLY PIERRE**, affirm that I have fully reviewed the foregoing Agreement with my attorney,

_____

Notary Public

STATE OF _____ )

                     ) ss:

COUNTY OF _____ )

I, **CARLOS DE LEON CHIYAL**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this                   _____
_____ Day of _____, 2021       CARLOS DE LEON CHIYAL

_____

Notary Public

STATE OF _N_E_W_ _York_ )

                     ) ss:

COUNTY OF _New_ _York_ )

I, **LESLY PIERRE**, affirm that I have fully reviewed the foregoing Agreement with my attorney,

that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this
___ Day of ___July___ , 2021

LESLY PIERRE

Notary Public

AVI MERMELSTEIN
Notary Public - State of New York
No. 02ME6374115
Qualified in Bronx County
My Commission Expires April 23, 2022

**DEFENDANTS:**

STATE OF NEW YORK    )

                                       ) ss:

COUNTY OF _____    )

I, **MARTIN TAUB**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily in both my individual capacity and as an authorized officer of UNDERWEST WESTSIDE OPERATING CORP.

Sworn to before me this
_____ Day of _____, 2021

MARTIN TAUB, Individually and
on behalf of UNDERWEST WESTSIDE
OPERATING CORP.

Notary Public

**DEFENDANTS:**

STATE OF ~~NEW YORK~~ NEW JERSEY )

                           ) ss:

COUNTY OF Essex )

I, **MARTIN TAUB**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily in both my individual capacity and as an authorized officer of UNDERWEST WESTSIDE OPERATING CORP.

Sworn to before me this ~~18~~ 10 Day of August , 2021

_Jasmy Navarro_

Notary Public

_____

MARTIN TAUB, Individually and
on behalf of UNDERWEST WESTSIDE
OPERATING CORP.

STATE OF ~~NEW YORK~~ NEW JERSEY )

                           ) ss:

COUNTY OF Essex )

> JASMY V NAVARRO
> Notary Public, State of New Jersey
> My Commission Expires
> November 07, 2021

I, **MOSHE WINER**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this
10 Day of August , 2021

_Jasmy Navarro_

Notary Public

_____

MOSHE WINER

> JASMY V NAVARRO
> Notary Public, State of New Jersey
> My Commission Expires
> November 07, 2021